UNITED STATES DISTRICT COURT
SOUTHERN DISRICT OF FLORIDA

Case No. 1:16-cv-21255-UU

PEGASUS AVIATION IV, INC.,

    Plaintiff,

v.

AIRCRAFT COMPOSITE
TECHNOLOGIES, INC.,

    Defendant.
_____/

## ORDER ON MOTION TO DISMISS

THIS CAUSE is before the Court upon Defendant's Motion to Dismiss, D.E. 18, filed May 2, 2016. The Motion is fully briefed and ripe for disposition.

THE COURT has reviewed the pertinent portions of the record and is otherwise fully advised in the premises. For reasons set forth below, Defendant's Motion is DENIED.

## BACKGROUND

The following allegations are taken from Plaintiff's Complaint ("the Complaint"). D.E. 1.

This action arises from Defendant's, Aircraft Composite Technologies, Inc.'s ("Defendant" or "ACT"), alleged breach of contract, breach of express warranty and breach of implied warranty of merchantability stemming from the sale of six aircraft thrust reversers to Pegasus Aviation IV, Inc. ("Plaintiff") for use in a MD 11F airplane owned by Plaintiff (the "Aircraft"). Plaintiff leased the Aircraft to AV Cargo Airlines, Ltd. ("AV Cargo"), which is a British freight operator. *Id.* ¶ 8.

In November 2013, Plaintiff entered into negotiations with ACT and GMAir, an aircraft supply company, to purchase one overhauled thrust reverser from GMAir that would be

1

overhauled by ACT for use in the Aircraft. *Id.* ¶ 12. Under the parties' agreement, GMAir would supply the thrust reverser, and ACT would perform the overhaul process in compliance with the Original Equipment Manufacturers' ("OEM") overhaul procedures. *Id.*

On November 27, 2013, Plaintiff entered into a contract with GMAir for the purchase of one overhauled thrust reverser for a total purchase price of $380,000. *Id.* ¶ 13. ACT was included in the email communications between GMAir and Pegasus during the negotiation of the contract and was, therefore, aware that the overhauled thrust reverser was for use by Pegasus in the Aircraft. *Id.* On or about January 6, 2014, ACT completed the overhaul. *Id.* On or about January 7, 2014, ACT shipped the thrust reverser to the Aircraft. *Id.* Plaintiff paid all amounts due under the November 27, 2013 contract. *Id.*

In May 2014, Plaintiff began negotiating directly with ACT for the purchase of five additional overhauled thrust reversers to install in the Aircraft. *Id.* ¶ 14. These negotiations took place orally and via e-mail. *Id.* ¶¶ 14-16. On May 28, 2014, the parties entered into a contract, whereby ACT would supply five overhauled thrust reversers at a price of $300,000 per thrust reverser. *Id.* ¶ 16. ACT agreed to a twenty-four month warranty for these five overhauled thrust reversers, which would commence upon installation of the thrust reversers, and requested that Plaintiff prepare and send a conforming purchase order. *Id.* On or about May 28, 2014, Plaintiff sent ACT a purchase order for the five thrust reversers (the "Purchase Order"). *Id.* ¶ 17. The Purchase Order included ACT's twenty-four month warranty. *Id.*

On or about June 19, 2014, ACT completed its overhaul process and shipped the five thrust reversers to the Aircraft in Indonesia. *Id.* ¶ 18. Plaintiff paid all amounts due under the May 28, 2014 contract. *Id.* The thrust reversers subject to the May 28, 2014 contract were installed in the Aircraft in July 2014. *Id.* ¶ 19. Due to other maintenance issues, the Aircraft

remained in Indonesia until June 2015. *Id.*

On or about June 27, 2015, the Aircraft made its first flight following installation of the five additional thrust reversers. *Id.* ¶ 20. During this flight, which lasted only two hours, four thrust reversers suffered catastrophic failures, thereby posing an immediate safety hazard to the Aircraft and its crew members. *Id.* The Aircraft was grounded in Singapore and transferred to the ST Aerospace Services Co. ("SASCO"), which is a maintenance facility at Singapore's Changi Airport. *Id.* SASCO performed tests on the malfunctioning thrust reversers and determined that the reversers had failed and that the acoustical mesh layer was delaminating, or separating, from the skin layer, which indicated that the bonding was failing. *Id.* ¶ 21. Because of the extent of damage to the thrust reversers, SASCO could not repair the reversers on site. *Id.* ¶ 22.

Soon thereafter, Plaintiff provided written notice to ACT to inform ACT of the failed thrust reversers. *Id.* ¶ 23. ACT failed to repair the damaged thrust reversers or to otherwise propose a reasonable avenue to repair or pay for the repair of the four failed thrust reversers. *Id.* Plaintiff then retained UTC Aerospace Systems ("UTAS"), an affiliate of the OEM of the thrust reversers, to inspect and repair the damaged thrust reversers. *Id.* ¶ 24. In August 2015, Plaintiff entered into a contract with UTAS to perform the repairs. *Id.* ¶ 25.

UTAS could not repair the thrust reversers on site and, on August 17, 2015, shipped the four failed thrust reversers to a UTAS facility for further inspection and repair. *Id.* UTAS disassembled the four thrust reversers and concluded that seven of the eight cowl and translating sleeve components in the four failed reversers were defective. *Id.* ¶ 26. UTAS further concluded that ACT's overhaul of the thrust reversers did not comply with the OEM overhaul procedures specified in the OEM Repair Manual because ACT: (1) failed to use proper adhesive materials; (2) failed to adequately remove corrosion; and (3) failed to apply primer during the overhaul

3

process. *Id.* ¶ 27. After UTAS' inspection, Plaintiff retained Vertical Aerospace, a company that provides airplane maintenance, repair and overhaul services ("VA"), to perform a second analysis of the cause of the delamination on the failed thrust reversers. *Id.* ¶ 28. VA confirmed UTAS' conclusion that ACT's overhaul did not comply with the OEM overhaul procedures and that this improper overhaul caused the thrust reversers to fail. *Id.*

In October 2015, UTAS repaired the seven failed components in the four malfunctioned thrust reversers, at a total cost of $1.35 million. *Id.* ¶ 29. Plaintiff paid UTAS the full amount of the repair cost, and the Aircraft resumed flights in or around December 2015. *Id.*

In February 2016, the eighth component—the translating sleeve on one of the four already-malfunctioned thrust reversers—failed. *Id.* ¶ 30. The Aircraft was, once again, grounded. *Id.* Plaintiff informed ACT of the part's failure and ACT refused to repair the damaged part or to otherwise propose a reasonable avenue to repair or pay for the repair. *Id.* ¶ 31. AV Cargo, the lessee of the Aircraft, replaced the component at a cost exceeding $150,000. *Id.* ¶¶ 8, 30. Plaintiff did not pay AV Cargo for these repairs, but anticipates that AV Cargo will seek reimbursement of these repair costs. *Id.* ¶ 30.

Based on these underlying allegations, Plaintiff brings four Counts. Count I alleges a claim for breach of contract, as a third party beneficiary, of the contract between GMAir and ACT related to Plaintiff's purchase of one thrust reverser from GMAir on November 27, 2013 (the "GMAir-ACT Contract"). Count II alleges a claim for breach of contract of the May 28, 2014 contract (the "Plaintiff-ACT Contract"). Count III alleges a claim for breach of express warranty based on both the GMAir-ACT Contract and Plaintiff-ACT Contract. Lastly, Count IV alleges a claim for breach of implied warranty of merchantability based on both the GMAir-ACT Contract and Plaintiff-ACT Contract.

On May 2, 2016, ACT moved to dismiss Plaintiff's Complaint, in its entirety, under Federal Rule of Civil Procedure 12(b)(6) or, alternatively, to strike Plaintiff's request for attorneys' fees pursuant to Federal Rule of Civil Procedure 12(f).

## **LEGAL STANDARD**

In order to state a claim, Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." While a court, at this stage of the litigation, must consider the allegations contained in the plaintiff's complaint as true, this rule "is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In addition, the complaint's allegations must include "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. (citing *Twombly*, 550 U.S. at 555).

In practice, to survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* The plausibility standard requires more than a sheer possibility that a defendant has acted unlawfully. *Id.* Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief. *Id.* Determining whether a complaint states a plausible claim for relief is a context-specific undertaking that requires the court to draw on its judicial experience and common sense. *Id.* at 679.

**DISCUSSION**

Defendant moves to dismiss each Count of Plaintiff's Complaint because: (1) Plaintiff fails to attach the GMAir-Act Contract to its Complaint and, moreover, does not adequately plead a claim for breach of contract as a third party beneficiary (Count I); (2) Plaintiff fails to satisfy Florida's Statute of Frauds (Count II); (3) there is no privity between ACT and Plaintiff, thereby defeating Plaintiff's express and implied warranty claims (Counts III and IV); and (4) Plaintiff does not show that Defendant's breach of implied warranty of merchantability proximately caused Plaintiff's injuries (Count IV). Alternatively, Defendant moves to strike Plaintiff's request for attorneys' fees in its prayer for relief. The Court will address each argument in turn.[1]

**I.    Breach of GMAir-ACT Contract (Count I)**

A. Failure to Attach Contract

Defendant moves to dismiss Count I because Plaintiff did not attach the GMAir-ACT Contract to its Complaint or, alternatively, refer to ACT's breach of specific provisions within the contract. D.E. 18 pp. 5-6. In response, Plaintiff contends that the Complaint plausibly alleges a claim for breach of the GMAir-ACT Contract for two reasons. First, Plaintiff states that *Iqbal* and *Twombly* do not require it to attach the GMAir-ACT Contract to the Complaint in order to state a claim. D.E. 25 at 9-10. Second, Plaintiff argues that the Complaint states a claim because it alleges: (1) the specific contracts at issue; (2) the terms that Defendant breached; and (3) damages stemming from Defendant's breach of contract. D.E. 25 at 11-12.

The Court agrees with Plaintiff. As an initial matter, Plaintiff is not required to attach the

---

[1] "It is undisputed that Florida law governs the substantive issues in this case because jurisdiction is based on diversity of citizenship." *See, e.g.*, *Guideone Elite Ins. Co. v. Old Cutler Presbyterian Church, Inc.*, 420 F.3d 1317, 1326 (11th Cir. 2005).

GMAir-ACT Contract to state a claim. *Haese v. Celebrity Cruises, Inc.*, No. 12-20655-CIV, 2012 WL 3808596, at *1 (S.D. Fla. May 14, 2012); *Punta Gorda--Charlotte Harbor Dev., LLC v. Allstate Ins. Co.*, No. 2:08-CV-719-FtM-29SPC, 2009 WL 3418260, at *2 (M.D. Fla. Oct. 20, 2009) ("Failure to attach the contract as an exhibit is not fatal to the Amended Complaint . . . [because] Rule 8 does not require a plaintiff to plead with the greatest specificity it can."); *Manicini Enters., Inc. v. American Exp. Co.*, 236 F.R.D. 695, 698 (S.D. Fla. 2006); *but see Burgess v. Religious Tech. Ctr., Inc.*, 600 F. App'x 657, 664-665 (11th. Cir. 2015) (failing to attach contract to complaint warranted dismissal of breach of contract claim because "there were multiple contracts at issue, including the Financial Policy, the Admission and Services Agreement, the Student Rules of Conduct, the Confidentiality Agreement, and various Consent forms. . . [s]ome of [which] . . . were signed only by the patients and others by the plaintiffs and the patients"). Instead, Plaintiff need only allege enough facts to plausibly show that the Defendant breached the GMAir-ACT Contract. Plaintiff has done so by alleging that: (1) GMAir and ACT entered into a "written contract for ACT to overhaul the thrust reverser;" (2) ACT breached this contract by, among other things, "failing and refusing to deliver a properly overhauled thrust reverser, failing to comply with the overhaul procedures specified in the OEM manual, and failing and refusing to repair or replace the defective thrust reverser or to pay for the cost of repair or replacement; and (3) ACT's breach caused Plaintiff to suffer injury. D.E. 1 ¶¶ 35, 38, 39; *see also Jovine v. Abbott Labs., Inc.*, 795 F. Supp. 2d 1331, 1341 (S.D. Fla. 2011) ("To state a claim for breach of contract under Florida law, Plaintiff must allege: (1) a valid contract, (2) a material breach, and (3) damages.").

B. <u>Third Party Beneficiary</u>

Defendant also argues that Plaintiff fails to state a claim in Count I because it does not

refer to specific contractual provisions to indicate that Plaintiff is a third party beneficiary of the GMAir-ACT Contract, but instead merely alleges that it "is informed and believes and thereon alleges that GMAir and ACT entered into a written contract for ACT to overhaul the thrust reverser with the clear and manifest intent that the contract primarily and directly benefit [Plaintiff]." D.E. 18 pp. 6-7; D.E. 1 ¶ 35. Plaintiff responds, in relevant part, that it has plausibly alleged that GMAir and ACT contracted with the intent to benefit Plaintiff, especially given that ACT shipped the overhauled thrust reverser, which was the subject of the GMAir-ACT Contract, directly to Plaintiff on January 7, 2014. D.E. 25 pp. 10-11.

Defendant's argument has no merit. As already discussed, Plaintiff identified the contract at issue in Count I, the provisions within the contract that were likely breached, and the damages stemming from that breach. D.E. 1 ¶ 35, 38, 39. Plaintiff also alleges that GMAir and ACT entered into the GMAir-ACT Contract "with the clear and manifest intent that the contract primarily and directly benefit" Plaintiff, as evidenced by the fact that ACT was "included in email communications between GMAir and [Plaintiff] during the negotiation of the contract" and that ACT delivered the overhauled thrust reverser directly to Plaintiff's Aircraft, and not to GMAir. *Id.* ¶¶ 13, 35-36. These allegations are more than enough to state a claim for breach of contract as a third party beneficiary. *See, e.g.*, *Principal Bank v. First Am. Mortgage, Inc.*, No. 2:10-cv-190-FtM-29DNF, 2012 WL 473507, at *8 (M.D. Fla. Feb. 14, 2012) ("At this stage of the proceedings, plaintiff must simply allege an intent to benefit it as the third-party, not prove that it is in fact a third-party beneficiary."). Accordingly, Defendant's Motion is denied with respect to Count I.

## II.     Breach of Plaintiff-ACT Contract (Count II)

Defendant argues that Plaintiff's claim for breach of the Plaintiff-ACT Contract (Count

II) should be dismissed because it is barred by Florida's Statute of Frauds. D.E. 18 p. 9. Under Florida's Statute of Frauds, "a contract for the sale of goods for the price of $500 or more is not enforceable . . . unless . . . signed by the party against whom enforcement is sought." Fla. Stat. § 672.201. Here, Defendant argues that the Purchase Order attached to Plaintiff's Complaint is unexecuted and, therefore, precludes Plaintiff from stating a claim for breach of the Plaintiff-ACT Contract.

In response, Plaintiff argues that the Purchase Order is not the basis for its breach of contract claim, but is instead evidence of an agreement already reached by Plaintiff and ACT via e-mail. D.E. 25 p. 13. Plaintiff also argues that, in any event, the Plaintiff-ACT Contract falls outside the Statute of Frauds because it concerns "goods for which payment has been made and accepted or which have been received and accepted." *Id.* (citing Fla. Stat. § 672.201(3)(c)).

The Court concludes that the Plaintiff-ACT Contract falls outside of Florida's Statute of Frauds because Defendant performed under the Plaintiff-ACT Contract which, standing alone, removes the contract from the Statute of Frauds. Fla. Stat. § 672.201(3)(c); *see also LEA Indus., Inc. v. Raelyn Int'l, Inc.*, 363 So. 2d 49, 52 (Fla. 3d DCA 1978). Accordingly, Defendant's Motion is denied with respect to Count II.

### III. Breach of Warranty Claims (Counts III &IV)

#### A. The GMAir-ACT Contract

Defendant argues that Plaintiff fails to state a claim for breach of express warranty (Count III) and breach implied warranty of merchantability (Count IV), in so far as these claims rely on the GMAir-ACT Contract, for two reasons. First, Defendant argues that Plaintiff failed to either attach the GMAir-ACT Contract to the Complaint or, alternatively, to specify the express warranty provision breached by Defendant. D.E. 18 p. 11. Second, Defendant argues that

9

Plaintiff lacks privity of contract with ACT, thereby defeating its warranty claims. *Id.* pp. 11-12.

In response, Plaintiff argues that: (1) it is not required to attach the GMAir-ACT Contract to the Complaint; (2) it adequately alleged breach of express warranty; and (3) it adequately alleged that Plaintiff was a foreseeable user of the thrust reversers, which is enough for a third party beneficiary to state a claim for breach of express or implied warranty under Florida law. D.E. 25 pp. 15-16.

Plaintiff is correct. Just as with its breach of contract claims, Plaintiff is not required to attach the relevant contracts to state a claim for breach of express warranty or breach of implied warranty of merchantability. *See, e.g.*, *Allianz Glob. Risks U.S. Ins. Co. v. Singlesource Roofing Corp.*, No. 2:05-cv-603-FtM-29SPC, 2006 WL 2536705, at *2 (M.D. Fla. August 31, 2006) (concluding that "failure to attach the [warranty] documents is not a basis for dismissal of the Complaint"). And Plaintiff plausibly alleges each of the elements required for breach of express and implied warranty. *See Moss v. Walgreen Co.*, 765 F. Supp. 2d 1363, 1368 (S.D. Fla. 2011) (setting forth elements of breach of express warranty); *see also Marcus v. Anderson/Gore Holmes, Inc.*, 498 So. 2d 1051, 1052 (Fla. 4d DCA 1986) (setting forth elements of breach of implied warranty of merchantability).

Defendant's argument concerning privity of contract also fails. Plaintiff can state a claim for breach of express warranty and breach of implied warranty of merchantability, even without direct privity, as long Plaintiff adequately alleges that it was a third party beneficiary of the contract for the sale of the thrust reversers. *Sanchez-Knutson v. Ford Motor Co.*, 52 F. Supp. 3d 1223, 1233-34 (S.D. Fla. 2014); *Dineen v. Pella Corp.*, No. 2:14-CV-03479-DCN, 2015 WL 6688040, at *12 (D.S.C. Oct. 30, 2015) (applying Florida law); *see also Fed. Ins. Co. v. Bonded Lightning Prot. Sys., Inc.*, No. 07-80767-CIV, 2008 WL 5111260, at *7 (S.D. Fla. Dec. 3, 2008).

Here, Plaintiff alleges that ACT was included in email communications between GMAir and Plaintiff concerning the thrust reverser ultimately subject to the GMAir-ACT contract, and that ACT delivered the overhauled thrust reverser directly to Plaintiff. D.E. 1 ¶¶ 13, 35-36. This is enough to allege that Plaintiff was a third party beneficiary of the GMAir-ACT Contract and, therefore, is sufficient to state a claim for breach of express and implied warranty based on Plaintiff's status as the "ultimate consumer of the subject" thrust reverser. *Sanchez-Knutson*, 52 F. Supp. 3d at 1233. Accordingly, Plaintiff's Complaint states a claim for breach of express warranty and breach of implied warranty of merchantability with respect to the thrust reverser sold under the GMAir-ACT Contract.

      B. The Plaintiff-ACT Contract

Defendant argues that Plaintiff's warranty claims brought in Counts III and IV should be dismissed, to the extent that these claims rely on the Plaintiff-ACT Contract, because: (1) the underlying contract violates the Statute of Frauds; and (2) ACT's alleged breach was not the proximate cause of Plaintiff's injuries, as Plaintiff's Aircraft also suffered from other maintenance issues while it remained grounded in Indonesia in or around June 2015. D.E. 18 p. 12.

The Court has already concluded that Defendant's Statute of Frauds argument fails, as Defendant performed its duties under the Plaintiff-ACT Contract. Fla. Stat. § 672.201(3)(c); *LEA Indus., Inc.*, 363 So. 2d at 52. Moreover, the Court cannot determine whether ACT's alleged breach proximately caused Plaintiff's injuries because, at this stage, the Court may not resolve disputed issues of fact. *Perlman v. Bank of Am., N.A.*, 561 F. App'x 810, 812 (11th Cir. 2014). For these reasons, the Court finds that the Complaint states a claim for breach of express warranty in Count III and breach of implied warranty of merchantability in Count IV.

**IV.    Attorneys' Fees**

Defendant moves to strike Plaintiff's request for attorneys' fees on grounds that there is no contractual, statutory or constitutional provision that permits Plaintiff to recover such fees. D.E. 18 p. 13. In response, Plaintiff argues that while the Complaint does not allege a specific basis for attorneys' fees, it would be premature to strike its request for attorneys' fees in the prayer for relief. D.E. 25 pp. 17-18.

The Court agrees with Defendant. Under Rule 12(f), the Court may strike "redundant, immaterial, [or] impertinent" allegations. Here, Plaintiff's request for attorneys' fees is immaterial because there is no basis for Plaintiff to recover attorneys' fees under Florida law absent an express provision in the GMAir-ACT Contract or Plaintiff-ACT Contract permitting such fees, and the Complaint does not point to such a provision. *See, e.g.*, *Kittel v. Kittel*, 210 So. 2d 1, 3 (Fla. 1967) ("It is an elemental principle of law in this State that attorney's fees may be awarded a prevailing party only under three circumstances, viz: (1) where authorized by contract; (2) where authorized by a constitutional legislative enactment; and (3) where awarded for services performed by an attorney in creating or bringing into the court a fund or other property."); D.E. 1.   Accordingly, it is

ORDERED AND ADJUDGED that Defendant's Motion, D.E. 18, is GRANTED IN PART and DENIED IN PART. Plaintiff's demand for attorneys' fees is HEREBY STRICKEN from the Complaint. The Motion is otherwise DENIED. It is further

ORDERED AND ADJUDGED that Defendant SHALL file an Answer to Plaintiff's Complaint no later than **Wednesday, <u>June 22, 2016.</u>**

DONE AND ORDERED in Chambers at Miami, Florida this _17th__ day of June, 2016.

_____
URSULA UNGARO
UNITED STATES DISTRICT JUDGE

copies provided: counsel of record